UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARAMJIT SANDHU,

      Plaintiff,

v.

JANET NAPOLITANO, SECRETARY
OF HOMELAND SECURITY,

      Defendant.
_____/

Case No. 10-12593

HON. AVERN COHN

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e-16, and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621 *et seq*. Plaintiff Paramjit Sadhu was an officer with Customs and Border Protection (CBP), a division of the Department of Homeland Security (DHS). Sandhu is suing Janet Napolitano in her capacity as Secretary of DHS claiming his employment was terminated because of his race and age. The complaint is in two counts: (I) Racial Discrimination and (II) Age Discrimination.

Now before the Court is CBP's motion for summary judgment. For the reasons that follow, the motion is **GRANTED**.

II.  Background

A. Hiring and Training

The material facts as gleaned from the parties papers follow.[1]  Sandhu, now 52,[2] is a naturalized U.S. citizen of Indian decent; he speaks with a noticeable accent. The CBP appointed Sandhu to the position of officer at the Port of Detroit Field Office on November 24, 2008.  Sandhu was hired under the Federal Career Intern Program. The program provides for a two-year appointment with the expectation of a conversion to a career position.  CBP uses the two-year appointment as a probationary and evaluation period.    As required for all new officers, Sandhu attended the CBP training academy in Atlanta, Georgia.  He was the oldest trainee in his class.  Sandhu says while at the academy other trainees and instructors frequently commented on his age. Sandhu also reports that a fellow trainee, Marshall Walcer, made racist remarks targeting him, including referring to Sandhu as "Arab"[3] and remarking that the CBP "was hiring terrorists."  Sandhu did not report this conduct.

In Atlanta, CBP issued equipment and uniforms to the trainees, including three ammunition magazines for use with the CBP issued service weapon. After his

---

[1] The background comes from CBP's submission "Defendant's Statement of Material Facts Not in Dispute" and the Plaintiff's Response to Defendant's Motion for Summary Judgment."  Sandhu failed to file a statement of material facts not in dispute in violation of the Court's motion practice guidelines. *See* Judge Cohn, Motion Practice Guidelines, available at http://www.mied.uscourts.gov/judges/guidelines/topic.cfm?topic_id=89.

[2] Shortly after Sandhu's hire, as will be explained, the CBP rules changed to require an applicant to be under the age of thirty-seven. *See* Consolidated Appropriations Act, Pub. L. No. 110-161, 121 Stat. 1844 (2008). This change did not apply to Sandhu. *See* Pub. L. No. 110-161 §535(e) (2008).

[3] Sandhu says Walcer's referring to him as "Arab" was intended as an insult or slur.

2

successful completion of the training academy, Sandhu with his standard issue gear departed for Detroit.

## B. Jacksonville Airport

On the way home from Atlanta, Sandhu and several other recent graduates flew out of Jacksonville, Florida. When Sandhu went to check his bags, the attendant advised him they were overweight and suggested he take one as a carry-on. One of the three empty ammunition magazines issued by CBP was in the carry-on bag. Sandhu says this was an oversight; he did not realize it was there. Sandhu proceeded through security where Transportation and Security Administration (TSA) personnel observed the empty magazine while x-raying his bag and confiscated it.

Sandhu joined his fellow CBP officers at a restaurant in the airport. The other CBP officers were seated at the bar and Sandhu sat down next to them. A member of the public sat on Sandhu's other side. One of the CBP officers asked where he had been and Sandhu described the incident with TSA.[4] The other officers report that Sandhu complained of his treatment by TSA and expressed criticism and frustration that they would hassle a federal officer. Several of his fellow officers say they felt embarrassed by Sandhu's complaining and thought his comments were unprofessional. Further, that he should not have voiced his criticisms in public. Walcer reported Sandhu's conduct to the CBP. Walcer's report initiated an investigation by Sandhu's supervisors in Detroit.

---

[4] An empty magazine in not on the TSA's list of prohibited items. *See* PROHIBITED ITEMS, TRANSPORTATION SECURITY ADMINISTRATION, http://www.tsa.gov/travelers/airtravel/prohibited/permitted-prohibited-items.shtm (last visited 10/27/11). The government does not argue having the magazine in his carry-on as part of the rational for Sandhu's termination.

3

### C. Detroit Port

Upon arrival in Detroit, Sandhu reported the incident with TSA to his superior, Sheila Appling. Sandhu says that Appling told him because he did not get a receipt from TSA that the magazine was considered "lost." Sandhu reported to the Firearms Office to collect his service weapon. The firearms instructor inquired about the location of the third magazine.[5] Sandhu told him it was "lost" and "he did not notice that he was missing [a magazine] until he returned home…and inventoried his gear." The instructor replaced the magazine without incident or further inquiry.

### D. Investigation

CBP referred Walcer's complaint to the Detroit Port Director Roderick Blanchard. Blanchard assigned Chief Robert Larkin to investigate the complaint. In the course of the investigation, Larkin interviewed Sandhu. Sadhu says during the interview Larkin inquired about his age and nationality.

Larkin took statements from the five officers present in the restaurant. Their descriptions of the event are nearly identical. They disagree, however, whether Sandhu was wearing or holding his CBP jacket at the time therefore displaying his status as a CBP officer.

Larkin finished his investigation by concluding the report of unprofessional behavior by Walcer was substantiated. Larkin identified two provisions of the CBP Standards of Conduct he asserts Sandhu violated: 6.4.1 (unprofessional behavior) & 6.7.3 (lack of candor and fabrication of pertinent facts). Larkin filed his report with the assistant port director who, in turn, recommended Sandhu's termination to the port

---

[5] It is unclear from the record how or why the instructor knew about the missing magazine.

director. The port director of Detroit subsequently terminated Sandhu from CBP on June 30, 2009.

E. Replacement

The Detroit Port did not hire another officer until March of 2011. From March to May of 2011 the Detroit Port hired six new officers, all of whom were non-Hispanic whites under the age of thirty-seven.[6] Beginning in July of 2011 the Port of Detroit hired four more officers, two older and two younger than thirty-seven. One of the officers is a non-Hispanic white and the other three did not report their race.

III. CBP's Motion for Summary Judgment

Sandhu filed the present suit contending his dismissal from the CBP was a result of age and race discrimination. As relief, Sandhu requests money damages.[7] CBP now asks the Court for summary judgment contending that there are no material facts in dispute requiring a trial and Sandhu has failed to make out a case of discrimination. CBP contends there is no evidence, direct or indirect, of discrimination based on age or race. CBP argues further that Sandhu's termination was legitimate and non-pretextual.

IV. Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to

---

[6] Consolidated Appropriations Act, Pub. L. No. 110-161, Div. E, Title V, § 535121 Stat. 1844 (2008) restricts appointment to candidates under the age of thirty-eight. See Customs and Border Protection, FAQs Working for Border Patrol, available at: http://www.cbp.gov/xp/cgov/careers/customs_careers/border_careers/bp_agent/faqs_working_for_the_usbp.xml#JobRequirements (last visited November 3, 2011) (listing the age requirement as under forty).

[7] Sandhu mentions reinstatement in passing but does not include this request in his prayer for relief in the complaint or the first amended complaint.

a judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

V. Discussion

A. Direct Evidence of Age and Race Discrimination

Sandhu claims his termination was motivated by race and age discrimination. Sandhu may make out a case of discrimination by either direct or circumstantial evidence.  Sandhu argues there is both direct and circumstantial evidence of age and race discrimination.  Direct evidence of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006) (citations omitted).

6

1. Age

Sandhu says his instructors' comments on his age during training in Atlanta and CBP's express policy of hiring officers under the age of thirty-seven are both facts that require a conclusion of age discrimination. However, the instructors at the training academy did not terminate Sandhu; his supervisors in Detroit terminated him. Sandhu advances no direct evidence to call in question the motives of the Detroit port director. Moreover, CBP's age requirement did not apply to Sandhu because he was certified for hire before it went into effect. A subsequent legislative change in hiring policy by CBP does not require the conclusion that the port director acted with a discriminatory motive. Thus, there is no direct evidence of a discriminatory motive.

2. Race

As to direct evidence of race discrimination, Sandhu says Walcer made disparaging remarks targeting Sandhu's racial identity and loyalty to the United States. Walcer's comments, however, cannot qualify as direct evidence because he is not Sandhu's employer. Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir.1998) (citations omitted) (quoting the definition of direct evidence of discrimination as "from the lips of the employer"). Although it was Walcer's complaint that triggered the investigation, he had no authority to terminate Sandhu and there is no indication his views, beyond his witness statement, had any influence in Larkin's factual findings or the ultimate decision by the port director to terminate Sandhu's employment.

Finally, Sandhu says that Larkin's inquiry into his nationality is direct evidence of race discrimination. Direct evidence of discrimination, however, requires some indication of animus. Wharton v. Gorman-Rupp Co., 309 F. App'x 990, 995 (6th Cir.

7

2009) (citations omitted). Larkin's inquiry is not direct evidence of discrimination because it bears no indication of animus. Overall, Sandhu has not produced direct evidence of age or race discrimination.

B. Circumstantial Evidence of Race and Age Discrimination

1. Prima Facie Case

The analysis of a Title VII claim based on circumstantial evidence employs the burden-shifting framework outlined in McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802-805 (1973). Sandhu must show (1) he is a member of a protected class, (2) he is otherwise qualified for the job, (3) he suffered an adverse employment decision, (4) that he was replaced by a person outside his protected class or treated differently than a similarly situated non-protected employee. Id. at 802; *see also* Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001).

The analysis of an age discrimination claim is the same except for the first and fourth elements. An age discrimination claim requires Sandhu to demonstrate he was over 40 years old and CBP replaced him with a significantly younger person. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308 (1996).

a. Replacement

CBP admits that the eight of the next ten officers hired were younger than thirty-seven and all seven who reported their race were non-Hispanic whites. However, CBP says Sandhu was not replaced and therefore has not make out a prima facie case of discrimination. An employee is replaced when another person is assigned or hired to perform his duties. Grosjean v. First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003) (citations omitted). An employee is not replaced if his work is redistributed to existing

employees performing similar duties. Id.; *see also* Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.1990).

After Sandhu's dismissal, CBP Detroit Port did not hire another officer for almost two years. During the interim, according to CBP, Sandhu's responsibilities were divided among the other officers. CBP argues because no one took on Sandhu's duties he was not replaced as a matter of law. Sandhu does not address this argument. Nor does Sandhu describe any discrete or specific duties at the Port of Detroit that were taken over by another officer. Thus, Sandhu has not made out a prima facie case of discrimination because has not shown he was replaced.

### b. Lapse in Time

Almost two years elapsed between Sandhu's dismissal and another hire at the Port of Detroit. CBP says the length of time between the two events destroys an inference of replacement, citing Lilley v. BTM Corp., 958 F.3d 746, 752 (6th Cir. 1992). The Sixth Circuit in Lilley considered whether the defendant hiring another salesperson nine months after the plaintiff's discharge was sufficient to make out a prima facie case of discrimination. Id. The Lilley court explained that the remaining members of the sales force assumed the plaintiff's duties and only after an upturn in business nine months later did the defendant add a new salesperson to the workforce. Id. This was insufficient to show replacement. Id.

Sandhu asserts that the distance in time between his discharge and CBP hiring new officers occurred because of a hiring freeze. Sandhu, however, does not cite any evidence to support this contention and CBP says it was not subject to the federal hiring

9

freeze. The lapse in time between Sandhu's termination and the Port of Detroit hiring new officers does not support an inference of replacement.

Sandhu has not made out a prima facie case of discrimination because he has not shown he was replaced; merely showing that the Port of Detroit eventually hired someone else is insufficient to meet his burden.

### 2. Pretext

Establishment of a prima facie case of discrimination creates a presumption of unlawful discrimination. Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir.1997). Even if Sandhu had made out a prima facie case, the inquiry does not cease. If established, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment decision. Id. at 255. CBP argues that it terminated Sandhu for unprofessional conduct and dishonesty. Specifically, CBP says, Sandhu's behavior in the airport restaurant and Sandhu's misrepresentation to the firearms instructor violated CBP Standards of Conduct. Because CBP successfully articulated a legitimate non-discriminatory reason for his termination, the burden shifted back to Sandhu to demonstrate the proffered reason is pretextual.

### a. Factual Basis

To make a successful showing of pretext Sandhu must show CBP's proffered reason (1) has no basis in fact, (2) did not actually motivate his termination, or was (3) insufficient to warrant the termination. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2005). Sandhu says the proffered reason for his termination has no basis in fact and CBP's was motivated by animus.

i.  Jacksonville Airport

To support this contention, Sandhu points to conflicting statements regarding whether he was wearing his CBP jacket at the restaurant and thereby allowed his conduct to reflect poorly on the agency.  Although CBP never said displaying department insignia was a critical element of the misconduct, Sandhu argues because he had his jacket in his lap, his behavior could not have reflected poorly on the CBP.  According to the record, however, one of Sandhu's complaints was as a federal officer he should not be hassled by TSA.  Even if the jacket was in his lap, Sandhu made clear to everyone within earshot that he was a federal officer.  He was also sitting next to five other CBP officers; the visual context made his identification as CBP difficult to mistake.  Under either version of the incident, he was identifiable as a CBP officer.  This ground for Sandhu's termination had a basis in fact.

ii.  Misrepresentation to Firearms Instructor

Next Sandhu argues he was "not untruthful" with the firearms instructor regarding the confiscated magazine.  Sandhu, however, told the instructor "he did not notice that he was missing [a magazine] until he returned home…and inventoried his gear."  That statement was untrue. In subsequent interviews with CBP Sandhu admits he was dishonest with the firearms instructor; he said: "I realized I was making a mistake by not telling the truth on the day that I misinformed Firearms but I did not correct myself then because I was afraid I would get fired." Both of the incidents CBP cites as the grounds

for Sandhu's termination have a basis in fact. Whether or not the conduct is sufficient to merit termination, Sandhu does not say.[8]

b. Motivation for Termination: Public Law No. 110-161[9]

Next, Sandhu argues that the motivation for his termination stems from CBP's desire to comply with the new age requirement.[10] Consolidated Appropriations Act, Pub. L. No. 110-16, 121 Stat. 1844 Title V §535 (2008). Sandhu also asserts this policy is circumstantial evidence of age discrimination. As noted previously, this provision does not apply to Sandhu. Sandhu does not advance any evidence to suggest how or why the new law was a factor in his dismissal. Sandhu's argument that he was terminated out of CBP's desire to comply with Public Law 110-161 therefore is unpersuasive.

Overall, there is no evidence on the record that creates a question of fact for trial as to whether Sandhu's dismissal was pretext for age or race discrimination. The only support Sandhu offers is his conclusory allegation, which is insufficient. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

---

[8] Sandhu does not argue that the incidents of misconduct are insufficient to warrant termination, despite the fact that both appear relatively minor. Because Sandhu has not raised this argument, the Court will not address it.

[9] This is an appropriations bill in excess of four hundred pages. Sandhu does not specify the relevant title and section.

[10] See Customs and Border Protection, FAQs Working for Border Patrol, available at: http://www.cbp.gov/xp/cgov/careers/customs_careers/border_careers/bp_agent/faqs_working_for_the_usbp.xml#JobRequirements (last visited November 3, 2011).

## VI.  Conclusion

Sandhu has not advanced sufficient evidence of a material fact in dispute that would require a trial.  For the reasons stated above, defendant's motion for summary judgment is **GRANTED**.  The case is **DISMISSED**.

**SO ORDERED**.


Dated:  November 10, 2011            s/Avern Cohn
                                     AVERN COHN
                                     UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Thursday, November 10, 2011, by electronic and/or ordinary mail.

                                     s/Julie Owens
                                     Case Manager, (313) 234-5160